# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF MARYLAND

### Greenbelt Division

**SUZETTE N. ARMSTRONG,**
**as Executor of the Estate of**
**her Deceased Father, LEO A. MORIN**
**19103 Parallel Bluffs Ct.**
**Leesburg, VA 20176**

and

**PATRICIA MORIN**
**20890 Adams Mill Place**
**Ashburn, Virginia 20147**

       **Plaintiffs,**

    **v.**

**ADVENTIST REHABILITATION, INC.**
**820 West Diamond Avenue**
**Suite 600**
**Gaithersburg, Maryland 20878**

**Serve:**    **Kenneth B. DeStefano, Esq.**
          **820 West Diamond Avenue**
          **Suite 600**
          **Gaithersburg, Maryland 20878**

and

**ADVENTIST REHABILITATION**
**HOSPITAL OF MARYLAND, INC.,**
**trading as ADVENTIST**
**REHABILITATION CENTER OF**
**ROCKVILLE**
**820 West Diamond Avenue**
**Suite 600**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**Case No. \_\_\_\_**

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

**Gaithersburg, Maryland 20878**                    :

**Serve:      Kenneth B. DeStefano, Esq.**          :
        **820 West Diamond Avenue**
        **Suite 600**                                :
        **Gaithersburg, Maryland  20878**
                                                    :

**and**                                             :

                                                :

**ADVENTIST HEALTHCARE, INC.,**
**trading as SHADY GROVE ADVENTIST**                :
**HOSPITAL**
**820 West Diamond Avenue**                         :
**Suite 600**
**Gaithersburg, Maryland 20878**                    :

**Serve:      Kenneth B. DeStefano, Esq.**          :
        **820 West Diamond Avenue**
        **Suite 600**                                :
        **Gaithersburg, Maryland  20878**
                                                    :

**and**                                             :

                                                :

**ADVENTIST PHYSICIAN SERVICES,**
**INC.**                                            :
**820 West Diamond Avenue**
**Suite 600**                                       :
**Gaithersburg, Maryland 20878**

                                                :

**Serve:      Kenneth B. DeStefano, Esq.**          :
        **820 West Diamond Avenue**
        **Suite 600**                                :
        **Gaithersburg, Maryland  20878**            :

**and**                                             :

**TERRENCE SHEEHAN, M.D.,**                         :
**Individually**
**9909 Medical Center Drive**                       :
**Rockville, Maryland 20850**

                                                :

**Serve:      Larry D. McAfee, Esq.**

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Benjamin S. Salsbury, Esq.                    :
Bradford Roegge, Esq.
Gleason, Flynn, Emig &                        :
   Fogleman, Chartered
11 North Washington St.,                      :
Suite 400
Rockville, MD 20850                           :

**and**                                       :

**CRISTIE NAMATA, CRNP-AC,**                  :
**Individually**
**9909 Medical Center Drive**                 :
**Rockville, Maryland 20850**

**and**                                       :

**RAVI PASSI, M.D., P.C., trading as**        :
**ADVANCED PRIMARY &**
**GERIATRIC CARE**                            :
**15225 Shady Grove Road**
**Suite 208**                                 :
**Rockville, Maryland 20850**
**and**                                       :
**15245 Shady Grove Road**
**Suite 130**                                 :
**Rockville, Maryland 20850**
**and**                                       :
**P.O. Box 10067**
**Gaithersburg, Maryland 20898**              :

**Serve:**    **Ravi Passi, M.D.**        :
      **12409 Bacall Lane**
      **Potomac, Maryland  20854**                :

**and**                                       :

**PATRICIA GOMEZ, M.D.,**                     :
**Individually**
**Advanced Primary & Geriatric Care**         :
**15245 Shady Grove Road**
**Suite 130**

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 3 -

**Rockville, Maryland 20850** :

**and** :

**TAO YU, M.D.,** :
**Individually**
**Advanced Primary & Geriatric Care** :
**15245 Shady Grove Road**
**Suite 130** :
**Rockville, Maryland 20850**
:
**and**
:
**WEIHAN WANG, M.D.,** :
**Individually**
**Advanced Primary & Geriatric Care** :
**15245 Shady Grove Road**
**Suite 130** :
**Rockville, Maryland 20850** :

     **Defendants.** :

:

## COMPLAINT FOR NEGLIGENCE
### (Medical Negligence and Loss of Consortium)

## JURISDICTION AND VENUE

1.     Jurisdiction in this court is founded on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332.  The amount in controversy, exclusive of interest and costs, is in excess of Seventy-Five Thousand ($75,000.00) Dollars.

2.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391, as the cause of action arose in the state of Maryland.

3.     Plaintiffs filed their original claim with the Health Care Alternative Dispute Resolution Office of the State of Maryland on November 12, 2013.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

4.　　　On August 8, 2014, Plaintiffs filed a Waiver of Arbitration indicating that the case was being removed to the United States District Court for the District of Maryland, Greenbelt Division, as well as Certificates and Reports of Meritorious Claim from their qualified experts.

5.　　　The Order of Transfer is dated August 13, 2014 (see Exhibit 1 attached hereto).

## **PARTIES**

6.　　　Plaintiff Suzette N. Armstrong ("Plaintiff") is the duly appointed Executor of the Estate of Leo A. Morin, her deceased father ("Decedent" or "Mr. Morin").

7.　　　Plaintiff is bringing this claim as Executor of the Estate of Decedent.

8.　　　Plaintiff Patricia Morin ("Plaintiff Mrs. Morin," and together with Plaintiff, herein called "Plaintiffs") was, at all relevant times herein, the wife of Decedent.

9.　　　Plaintiffs and Decedent were, at all times relevant herein, residents of the Commonwealth of Virginia.

10.　　　Upon information and belief, at all times relevant herein, Defendant Adventist Rehabilitation, Inc. ("Adventist Rehab") was and is a medical facility licensed to do business in and conducting business in the State of Maryland.

11.　　　Upon further information and belief, at all times relevant herein, all practitioners at Defendant Adventist Rehab were and are licensed to practice their respective areas of specialty in the State of Maryland.

12.     Upon further information and belief and based upon representations made by Defendant Adventist Rehab, and at all times relevant herein, certain physicians, resident physicians, nurses, nursing assistants and other health care providers who provided care and treatment to Decedent were acting as agents, servants and/or employees of Defendant Adventist Rehab when they provided medical care and treatment to Decedent, and Defendant Adventist Rehab is vicariously liable for all acts and/or omissions thereof.

13.     Upon information and belief, at all times relevant herein, Defendant Adventist Rehabilitation Hospital of Maryland, Inc., trading as Adventist Rehabilitation Center of Rockville ("Adventist Rehab Maryland"), was and is a medical facility licensed to do business in and conducting business in the State of Maryland.

14.     Upon further information and belief, at all times relevant herein, all practitioners at Defendant Adventist Rehab Maryland were and are licensed to practice their respective areas of specialty in the State of Maryland.

15.     Upon further information and belief and based upon representations made by Defendant Adventist Rehab Maryland, and at all times relevant herein, certain physicians, resident physicians, nurses, nursing assistants and other health care providers who provided care and treatment to Decedent were acting as agents, servants and/or employees of Defendant Adventist Rehab Maryland when they provided medical care and treatment to Decedent, and Defendant Adventist Rehab Maryland is vicariously liable for all acts and/or omissions thereof.

16.     Upon information and belief, at all times relevant herein, Defendant Adventist Healthcare, Inc., trading as Shady Grove Adventist Hospital ("Adventist Healthcare"), was and is a medical facility licensed to do business in and conducting business in the State of Maryland.

17.     Upon further information and belief, at all times relevant herein, all practitioners at Defendant Adventist Healthcare were and are licensed to practice their respective areas of specialty in the State of Maryland.

18.     Upon further information and belief and based upon representations made by Defendant Adventist Healthcare, and at all times relevant herein, certain physicians, resident physicians, nurses, nursing assistants and other health care providers who provided care and treatment to Decedent were acting as agents, servants and/or employees of Defendant Adventist Healthcare when they provided medical care and treatment to Decedent, and Defendant Adventist Healthcare is vicariously liable for all acts and/or omissions thereof.

19.     Defendant Adventist Rehab, Defendant Adventist Rehab Maryland and Defendant Adventist Healthcare are herein collectively referred to as "Adventist."

20.     Upon further information and belief, at all relevant times herein, Defendant Adventist Physician Services, Inc. ("APS") was and is a professional corporation licensed to provide medical services in the State of Maryland by and through its employees, agents and/or servants.

21.     Upon further information and belief, at all relevant times herein, all practitioners at Defendant APS were and are licensed to practice their respective areas of specialty in the State of Maryland.

22.     Upon further information and belief, at all times relevant herein, certain physicians and other health care providers who provided care and treatment to Decedent were acting as agents, servants and/or employees of Defendant APS when they provided medical care and treatment to Decedent, and Defendant APS is vicariously liable for all acts and/or omissions thereof.

23.     Upon further information and belief, at all relevant times herein, Defendant Ravi Passi, M.D., P.C., trading as Advanced Primary & Geriatric Care ("PC") was and is a professional corporation licensed to provide medical services in the State of Maryland by and through its employees, agents and/or servants.

24.     Upon further information and belief, at all relevant times herein, all practitioners at Defendant PC were and are licensed to practice their respective areas of specialty in the State of Maryland.

25.     Upon further information and belief, at all times relevant herein, certain physicians and other health care providers who provided care and treatment to Decedent were acting as agents, servants and/or employees of Defendant PC when they provided medical care and treatment to Decedent, and Defendant PC is vicariously liable for all acts and/or omissions thereof.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

26.     Upon further information and belief, at all relevant times herein, Defendants nursing staff ("Adventist Nursing Staff") were and are licensed to practice in their respective areas of specialty in the State of Maryland.

27.     Upon further information and belief, at all relevant times herein, Adventist Nursing Staff held themselves out to Decedent and to the general public as professionals who took all the necessary care and precaution in the practice of their profession and who were qualified to administer to their patients based on their medical needs with all necessary care and precaution expected of other nurses staff in their fields.

28.     Upon further information and belief, at all relevant times herein, Adventist Nursing Staff were agents, servants and/or employees of Defendants Adventist, APS and/or PC.

29.     Upon further information and belief, at all relevant times herein, Defendant Terrence Sheehan, M.D. ("Dr. Sheehan") was and is a physician licensed to practice medicine in the State of Maryland.

30.     Upon further information and belief, at all relevant times herein, Dr. Sheehan held himself/herself out to Decedent and to the general public as a professional who took all the necessary care and precaution in the practice of his/her profession and who was qualified to administer to his/her patients based on their medical needs with all necessary care and precaution expected of other physicians in his/her field.

31.     Upon further information and belief, at all relevant times herein, Dr. Sheehan was an agent, servant and/or employee of Defendants Adventist, APS and/or PC.

32.     Upon further information and belief, at all relevant times herein, Defendant Cristie Namata, CRNP-AC ("CRNP Namata") was and is a certified registered nurse practitioner licensed in the State of Maryland.

33.     Upon further information and belief, at all relevant times herein, CRNP Namata held himself/herself out to Decedent and to the general public as a professional who took all the necessary care and precaution in the practice of her profession and who was qualified to administer to his/her patients based on their medical needs with all necessary care and precaution expected of other nurse practitioners in his/her field.

34.     Upon further information and belief, at all relevant times herein, CRNP Namata was an agent, servant and/or employee of Defendants Adventist, APS and/or PC.

35.     Upon further information and belief, at all relevant times herein, Defendant Patricia Gomez, M.D. ("Dr. Gomez") was and is a physician licensed to practice medicine in the State of Maryland.

36.     Upon further information and belief, at all relevant times herein, Dr. Gomez held himself/herself out to Decedent and to the general public as a professional who took all the necessary care and precaution in the practice of his/her profession and

who was qualified to administer to his/her patients based on their medical needs with all necessary care and precaution expected of other physicians in his/her field.

37.     Upon further information and belief, at all relevant times herein, Dr. Gomez was an agent, servant and/or employee of Defendants Adventist, APS and/or PC.

38.     Upon further information and belief, at all relevant times herein, Defendant Tao Yu, M.D. ("Dr. Yu") was and is a physician licensed to practice medicine in the State of Maryland.

39.     Upon further information and belief, at all relevant times herein, Dr. Yu held himself/herself out to Decedent and to the general public as a professional who took all the necessary care and precaution in the practice of his/her profession and who was qualified to administer to his/her patients based on their medical needs with all necessary care and precaution expected of other physicians in his/her field.

40.     Upon further information and belief, at all relevant times herein, Dr. Yu was an agent, servant and/or employee of Defendants Adventist, APS and/or PC.

41.     Upon further information and belief, at all relevant times herein, Defendant Weihan Wang, M.D. ("Dr. Wang") was and is a physician licensed to practice medicine in the State of Maryland.

42.     Upon further information and belief, at all relevant times herein, Dr. Wang held himself/herself out to Decedent and to the general public as a professional who took all the necessary care and precaution in the practice of his/her profession and who was

qualified to administer to his/her patients based on their medical needs with all necessary care and precaution expected of other physicians in his/her field.

43.    Upon further information and belief, at all relevant times herein, Dr. Wang was an agent, servant and/or employee of Defendants Adventist, APS and/or PC.

44.    Upon further information and belief, at all relevant times herein, the negligent acts and/or omissions committed Defendants Adventist, APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNA Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC occurred in facilities owned and operated by and in the State of Maryland.

45.    Upon further information and belief, Defendant Adventist is vicariously liable for all acts and/or omissions of Defendants APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNA Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC on the basis of apparent authority insofar as Defendant Adventist led Decedent to believe that said Defendants were agents of Defendant Adventist and Decedent reasonably relied upon said agency.

46.    Defendant Adventist together with Defendants APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNA Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC are herein collectively referred to as the "Defendants."

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

**FACTS**

47.     Upon information and belief, on November 3, 2010 and while at his home in Virginia, Mr. Morin was involved in various household chores and other activities. After having climbed a ladder placed in his garage, Mr. Morin fell from the ladder and suffered fractures to his cervical spine.

48.     Upon further information and belief, Mr. Morin was transported via emergency medical services to Inova Fairfax Hospital ("Inova"), where he was admitted and underwent successful cervical spine surgery on that same day, among other treatments and therapies.

49.     Upon further information and belief, Mr. Morin enjoyed a postoperative recovery without complication, following which he had no movement of but retained sensation in his lower extremities and weak gross motor movement in his upper extremities, among other things.

50.     Upon further information and belief, Mr. Morin was discharged from Inova on November 9, 2010 and admitted to Defendant Adventist for purposes of acute rehabilitative inpatient hospitalization for improving his strength and functional mobility.

51.     Upon further information and belief, at the time of his admission to Defendant Adventist, Mr. Morin had no skin breakdown or irritation or other alterations in his skin integrity involving his lower back, buttocks or lower extremities.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 13 -

52.     Upon further information and belief, Mr. Morin was admitted to the service of Dr. Sheehan, who provided care and treatment to him in the weeks that followed in collaboration with Adventist Nursing Staff, CRNP Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC.

53.     Upon further information and belief, Dr. Sheehan performed an initial evaluation of Mr. Morin on November 9, 2010.   He concluded that Mr. Morin's impairments included weakness, diminished sensation and difficulty with position changes and transfers, among other things.

54.     Upon further information and belief, Dr. Sheehan's initial plan of care included orders to turn Mr. Morin every two hours while in bed, utilization of a low air loss mattress and elevation of the head of his bed greater than forty degrees, among other things.

55.     Upon further information and belief, at or about 11:00 p.m. on the day of admission, Adventist Nursing Staff identified on page LM-01 attached hereto ("Nurse 1") noted that Mr. Morin was a maximum assist with transfers and had diminished sensation to his lower extremities.   Nurse 1 also noted that Mr. Morin had no sacral decubitus ulcers.

56.     Upon further information and belief, there is no evidence in the medical record indicating that, on this date, Nurse 1 or Adventist Nursing Staff identified on page LM-09 attached hereto ("Nurse 2") thoroughly, regularly and appropriately assessed Mr.

Morin's skin integrity, complied with physician's orders in turning him every two hours and/or appreciated his high level of risk for skin breakdown and alterations in skin integrity.

57.     Upon further information and belief, on November 10, 2010, Mr. Morin was evaluated by Dr. Gomez, who documented her plan to follow Mr. Morin with Dr. Sheehan on a daily basis.

58.     Upon further information and belief, on November 10, 2010 and November 11, 2010, each of Adventist Nursing Staff identified on pages LM-02, LM-11 and LM-13 attached hereto ("Nurse 3," "Nurse 4" and "Nurse 5") provided nursing care and treatment to Mr. Morin.

59.     Upon further information and belief, there is no evidence in the medical record indicating that, on these dates, Nurse 3, Nurse 4 or Nurse 5 thoroughly, regularly and appropriately assessed Mr. Morin's skin integrity, complied with physician's orders in turning him every two hours and/or appreciated his high level of risk for skin breakdown and alterations in skin integrity.

60.     Upon further information and belief, also on November 10, 2010 and November 11, 2010, Dr. Sheehan and/or other agents, servants and/or employees of APS evaluated Mr. Morin, yet there is no indication that Mr. Morin's skin integrity was assessed.

61.     Upon further information and belief, on November 11, 2010, Dr. Gomez and/or other agents, servants and/or employees of PC evaluated Mr. Morin, yet there is no indication that Mr. Morin's skin integrity was assessed.

62.     Upon further information and belief, on November 12, 2010, Dr. Sheehan and/or other agents, servants and/or employees of APS evaluated Mr. Morin and noted his "skin/wound" to be "intact."

63.     Upon further information and belief, on November 12, 2010, Dr. Yu and/or other agents, servants and/or employees of PC evaluated Mr. Morin, yet there is no indication that Mr. Morin's skin integrity was assessed.

64.     Upon further information and belief, on November 13, 2010, Adventist Nursing Staff identified on page LM-03, LM-04, LM-06 and LM-16 attached hereto ("Nurse 6") provided nursing care and treatment to Mr. Morin.

65.     Upon further information and belief, there is no evidence in the medical record indicating that, on this date, Nurse 6 thoroughly, regularly and appropriately assessed Mr. Morin's skin integrity, complied with physician's orders in turning him every two hours and/or appreciated his high level of risk for skin breakdown and alterations in skin integrity.

66.     Upon further information and belief, on November 13, 2010, Adventist Nursing Staff identified on page LM-04 and LM-16 attached hereto ("Nurse 7") provided nursing care and treatment to Mr. Morin.  Nurse 7 noted redness at his sacral area, the application of "cream" and turning every two hours "encouraged."

67.     Upon further information and belief, there is no evidence in the medical record indicating that, on this date or thereafter, Nurse 7 notified a physician of his/her findings, thoroughly, regularly and appropriately assessed Mr. Morin's skin integrity, complied with physician's orders in turning him every two hours and/or appreciated his high level of risk for skin breakdown and alterations in skin integrity.

68.     Upon further information and belief, also on November 13, 2010, Dr. Sheehan and/or other agents, servants and/or employees of APS evaluated Mr. Morin and noted "no new medical problems."

69.     Upon further information and belief, on November 13, 2010, Dr. Wang and/or other agents, servants and/or employees of PC evaluated Mr. Morin, yet there is no indication that Mr. Morin's skin integrity was assessed.

70.     Upon further information and belief, on November 14, 2010, Nurse 6 again provided nursing care and treatment to Mr. Morin.

71.     Upon further information and belief, there is no evidence in the medical record indicating that, on this date, Nurse 6 thoroughly, regularly and appropriately assessed Mr. Morin's skin integrity, complied with physician's orders in turning him every two hours and/or appreciated his high level of risk for skin breakdown and alterations in skin integrity.

72.     Upon further information and belief, on November 14, 2010, Adventist Nursing Staff identified on page LM-05 attached hereto ("Nurse 8") provided nursing care and treatment to Mr. Morin.

73.     Upon further information and belief, there is no evidence in the medical record indicating that, on this date, Nurse 8 thoroughly, regularly and appropriately assessed Mr. Morin's skin integrity, complied with physician's orders in turning him every two hours and/or appreciated his high level of risk for skin breakdown and alterations in skin integrity.

74.     Upon further information and belief, also on November 14, 2010, Dr. Sheehan and/or other agents, servants and/or employees of APS evaluated Mr. Morin and again noted "no new medical problems."

75.     Upon further information and belief, on November 15, 2010, Nurse 6 again provided nursing care and treatment to Mr. Morin.

76.     Upon further information and belief, there is no evidence in the medical record indicating that, on this date, Nurse 6 thoroughly, regularly and appropriately assessed Mr. Morin's skin integrity, complied with physician's orders in turning him every two hours and/or appreciated his high level of risk for skin breakdown and alterations in skin integrity.

77.     Upon further information and belief, on November 15, 2010, Dr. Sheehan and/or other agents, servants and/or employees of APS evaluated Mr. Morin and noted Mr. Morin's skin/wound was "intact."

78.     Upon further information and belief, on November 15, 2010, Adventist Nursing Staff identified on page LM-06 attached hereto ("Nurse 9") provided nursing care and treatment to Mr. Morin, and there is no evidence in the medical record

indicating that, on this date, Nurse 9 complied with physician's orders in turning him every two hours and/or appreciated his high level of risk for skin breakdown and alterations in skin integrity.

79.     Upon further information and belief, also on November 15, 2010 at 8:10 p.m., Nurse 9 noted the presence of a Stage II wound to Mr. Morin's sacrum.  Upon further information and belief, there is no evidence in the medical record indicating that, on this date or thereafter, Nurse 9 notified any physician of this finding; however there is an indication that Nurse 9 initiated a "wound consult."

80.     Upon further information and belief, on November 16, 2010 at 7:00 p.m., CRNP Namata and/or other agents, servants and/or employees of APS evaluated Mr. Morin, and Adventist Nursing Staff further noted contacting the wound nurse specialist again for purposes of obtaining a wound care consult.

81.     Upon further information and belief, on November 17, 2010 at 6:00 p.m., Adventist Nursing Staff once again contacted the wound nurse specialist.

82.     Upon further information and belief, on November 17, 2010at 9:00 p.m., Adventist Nursing Staff identified on page LM-07 attached hereto ("Nurse 10") evaluated Mr. Morin and provided nursing care and treatment to Mr. Morin as a wound care specialist.

83.     Upon further information and belief, Nurse 10 made various recommendations for purposes of treating Mr. Morin's decubitus ulcers, including

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

replacement of the low air loss mattress that had been used to date and position changes, among other things.

84.     Upon further information and belief, there is no evidence in the medical record indicating that Nurse 10 subsequently provided care to Mr. Morin and/or followed his Mr. Morin's clinical condition with regard to his decubitus ulcers.

85.     Upon further information and belief, in the weeks that followed, various treatments were attempted to address Mr. Morin's evolving and persistent decubitus ulcers.

86.     Upon further information and belief, as of December 14, 2010, Mr. Morin's Stage II sacral decubitus ulcer progressed to a Stage IV, and Mr. Morin had additionally developed a Stage III decubitus ulcer to the right buttock.  He was evaluated by Joseph Michaels, V, M.D., in the Wound Care Center at Defendant Adventist, who treated Mr. Morin with debridement and other therapies and made various recommendations for further care.

87.     Upon further information and belief, Mr. Morin was ultimately discharged from Defendant Adventist on or about January 23, 2011.

88.     Upon further information and belief, after discharge from Defendant Adventist, Mr. Morin had multiple follow-up visits with Dr. Michaels and other physicians, skilled nursing professionals and occupational and physical therapists for purposes of continuing care and treatment of his decubitus ulcers and their sequelae,

including without limitation, surgical debridement, vacuum-assisted closure therapy, skin-grafting surgery, and other treatment modalities.

89.     Upon further information and belief, following his admission to Defendant Adventist during which he developed severe and extensive decubitus ulcers, Mr. Morin suffered numerous and debilitating complications and illnesses associated therewith, including without limitation, multiple acute care facility admissions, wound infections, osteomyelitis, infection of the genitourinary and gastrointestinal tracts, surgical procedures and other various medical interventions and therapies.

90.     Upon further information and belief, prior to his admission at Defendant Adventist, Mr. Morin was in a state of good health despite his new-onset tetraplegia, including no alterations in his skin integrity of his lower back, buttocks or lower extremities, and was expected to enjoy a meaningful recovery and regain some measure of enjoyment of life despite his preadmission limitations due to his fall and surgical treatment.

91.     Upon further information and belief, as a result of the development of his severe and extensive decubitus ulcers during his admission at Defendant Adventist and their sequelae, Mr. Morin suffered extreme emotional and physical pain and suffering, loss of enjoyment of life, mental anguish and other non-economic and economic damages.

## COUNT I
### (Medical Negligence Resulting in Death)

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

92.     Plaintiffs, incorporate, by reference, paragraphs 1 through 91, as if fully set forth herein, and further alleges that, at all times relevant to the allegations herein, Decedent had a health care provider-patient relationship with each of the Defendants, including without limitation, Defendants Adventist, APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNP Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC who provided care and treatment to Decedent during his admission at Defendant Adventist beginning on November 9, 2010. Accordingly, Plaintiffs allege that each of these Defendants had a duty to provide Decedent with medical and/or nursing and/or other care and treatment consistent with the applicable national standard of care under the same or similar circumstances.

93.     Plaintiffs further allege that each of these Defendants, jointly and severally, violated the national standard of care as practiced by reasonably competent health care providers under the same or similar circumstances, and, as a result, Decedent suffered great physical and emotional pain, suffering and other damages. The negligent care and/or treatment by the Defendants included, but was not limited to, the following: (a) the failure by Defendants Adventist, APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNP Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC to (i) recognize and appreciate the risks associated with Decedent's limited mobility and/or immobility, his overall clinical condition and his risk factors for alterations in skin integrity, including without

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

limitation, Decedent's documented and recognized physical and functional impairments that included weakness, diminished sensation in the lower extremities, minimal ability to grasp using his upper extremities and difficulty with position changes and transfers, among other things;  (ii) recognize and appreciate Decedent's need for maximum assistance in position changes and weight-shifting and his inability to meaningfully minimize his risk of developing alterations in skin integrity without assistance from the Defendants despite his best efforts, compliance with instructions and cooperation;  (iii) effectively communicate changes in clinical condition and other relevant information to physicians and other Defendants, including without limitation, modifications in Decedent's treatment plan and alterations in Decedent's skin integrity and other abnormal findings; (iv) properly assess Decedent's complaints, signs and symptoms pertaining to his developing alterations in skin integrity and development of decubitus ulcers and their sequelae and promptly respond to such complaints, signs and symptoms and/or notify other Defendants of such complaints, signs and symptoms; (v)  timely and appropriately refer Decedent to appropriate medical specialists and/or consultants for timely and appropriate treatment of his alterations in skin integrity and developing decubitus ulcers, including wound care specialists, and timely confirm that such consultations have taken place within the appropriate and necessary time frame; (vi) initiate appropriate medical treatment of Decedent's alterations in skin integrity and developing decubitus ulcers; (vii) develop and implement an appropriate plan of care within their area of specialty in response to Decedent's alterations in skin integrity and

decubitus ulcers; (b) the failure by Defendants Nurse 1, Nurse 2, Nurse 3, Nurse 4, Nurse 5, Nurse 6, Nurse 7, Nurse 8 and Nurse 9 and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC to timely and appropriately implement physician's orders with regarding to potential alterations in skin integrity; (b) the failure by Defendants Nurse 7 and Nurse 9 and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC to timely and appropriately notify a physician of Decedent's sacral decubitus ulcers and other alterations in skin integrity; (c) the failure by Nurse 10 to timely and appropriately respond to requests for consults and to implement an appropriate, comprehensive and continuing treatment plan in collaboration with all members of Decedent's health care team as well as provide follow-up care and monitoring; and (d) the failure by Defendants Adventist, APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNP Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC to otherwise exercise the degree of skill and care required of competent health care practitioners under the circumstances.

94.     As a direct and proximate result of the foregoing negligent acts and/or omissions by Defendants Adventist, APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNP Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC, Decedent suffered significant and severe physical pain and suffering, severe mental anguish and other non-economic damages recoverable under the applicable Maryland law.

95.     As a further direct and proximate result of the foregoing negligent acts and/or omissions by Defendants Adventist, APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNP Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC, Decedent incurred significant medical expenses and associated costs and other economic damages recoverable under the applicable Maryland law.

96.     Plaintiffs further allege that Decedent's right of action for the foregoing negligent acts and/or omissions by Defendants Adventist, APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNP Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC survives in favor of Plaintiff Suzette N. Armstrong as Executor of the Estate of her deceased Father, Leo A. Morin.

## COUNT II
### (Loss of Consortium)

97.     Plaintiff Mrs. Morin incorporates, by reference, paragraphs 1 through 96 above and further alleges that she is the widow of Plaintiff.

98.     Plaintiff Mrs. Morin alleges that as a direct and proximate result of the foregoing negligent acts and/or omissions by Defendants Adventist, APS, PC, Adventist Nursing Staff, Dr. Sheehan, CRNP Namata, Dr. Gomez, Dr. Yu, Dr. Wang and/or other agents, servants and/or employees of Defendants Adventist, APS and/or PC, as previously described, she spent considerable time caring for and assisting Decedent from the time of the negligent acts and/or omissions and thereafter.   Plaintiff Mrs. Morin

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

further suffered a loss of companionship, affection and assistance with and from Decedent.

## **JURY TRIAL DEMAND**

Plaintiffs, through counsel, request a trial by jury on all of the above claims.

Respectfully submitted,

REGAN ZAMBRI & LONG, P.L.L.C.

By:  **_/s/ *Patrick M. Regan*_____**
Patrick M. Regan
pregan@reganfirm.com
Paul Cornoni
pcornoni@reganfirm.com
Jacqueline T. Colclough
jcolclough@reganfirm.com
1919 M Street, NW, Suite 350
Washington, DC  20036
PH: (202) 463-3030
Fx: (202) 463-0667
*Counsel for Plaintiffs*

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

### **RULE 1-322.2 CERTIFICATE**

I hereby certify that I have complied with Rule 1-322.1 regarding the exclusion of personal identifier information in court filings.

_/s/ *Patrick M. Regan*_____
Patrick M. Regan

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030